Karen POSTON and Barry Poston,
Plaintiffs-Respondents,

v.

Andrea L. BURNS and James D. Barr,
Defendants-Appellants.

Court of Appeals

*No. 2009AP463. Submitted on briefs February 2, 2010.
—Decided May 4, 2010.*

2010 WI App 73

(Also reported in 784 N.W.2d 717.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Associates* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John J. Prentice* and *Stefanie Carton* of *Simandl & Prentice, S.C.* of Waukesha.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J. Andrea L. Burns and James D.

Barr (collectively, "the Burns-Barrs") appeal from a judgment requiring them to pay $41,080.23 in attorney fees and costs associated with Karen and Barry Poston's[2] civil action against them for invasion of privacy. *See* Wis. Stat. § 995.50(2)(a) (2007–08).[3] We conclude that there is no competent evidence in the record which supports the finding that the Burns-Barrs violated § 995.50(2)(a). Therefore, we reverse and remand with directions to enter judgment in favor of the Burns-Barrs.

## BACKGROUND

¶ 2. This case involves a dispute between two sets of neighbors who lived in adjacent homes that were about eighteen feet apart.[4] Disagreements about whether the Postons were too loud and were harassing the Burns-Barrs led the Burns-Barrs to contact West Allis Police Department police officers, who agreed to listen to recordings of the alleged noise if the Burns-Barrs had any recordings.[5] The Burns-Barrs then made a series of audio recordings which they provided to the

---

[2] Because Karen and Barry Poston share the same last name, we will use their first names when referring to them individually. When we refer to them jointly, we use "the Postons."

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[4] Over the course of several years there were numerous disputes, including issues concerning a dog, a fence and the removal of a tree. We do not attempt to detail the extensive testimony on those disputes.

[5] Burns testified that she proposed mediation to the Postons a year earlier. She said the mediation center she contacted informed her that the Postons had declined mediation. Karen confirmed this at trial. A second attempt at mediation, sug-

police to substantiate their noise complaints. These recordings included sounds of car engines revving, music playing and people talking. The total length of the recordings, which were made over the course of about five months, was estimated to be eighteen hours. In one of the recordings, made when the Postons were hosting a party, Karen can be heard yelling at the Burns-Barrs. Based on that recording, the police issued her a ticket for disorderly conduct.

¶ 3. Subsequently, the Postons moved to another community and then filed this lawsuit against the Burns-Barrs, alleging that the Burns-Barrs violated the Postons' privacy by "[e]lectronically 'eavesdropping' on the [Postons'] private property and home . . . and recording [the Postons'] conversations without privilege or permission."[6] Discovery ensued.

¶ 4. In their depositions, the Burns-Barrs testified about the audio recordings. Barr explained they were concerned that the Postons were intentionally playing music outside the Burns-Barrs' bedroom window in order to bother Burns, who was suffering from a brain tumor.[7] Barr testified:

> They rolled their van up to our bedroom window after they knew [Burns] had a brain tumor . . . [specifically] they pulled their van up to the bedroom window and

gested by a court after Karen sought a restraining order against the Burns-Barrs, failed when the parties could not agree on a date to mediate.

[6] The Postons also alleged that the Burns-Barrs had videotaped and photographed the Postons, but those claims were later dropped.

[7] The window to the Burns-Barrs' bedroom was located several feet from the Postons' driveway.

407

played [it with] the passenger side window open only into the bedroom window. They did that two days in a row for four hours.

Barr said Karen also yelled "expletives into our bedroom [w]indow . . . [such as asking Burns] if she's waking up her brain tumor, [and saying things like] hope she's not making too much noise, brain tumor my ass, good-bye fruitcakes."[8]

¶ 5. Barr said that in order to document the noise and harassment, he and Burns made audio recordings using a fifty-dollar, hand-held Olympus digital recorder. Burns then transferred the digital files to his computer, burned a copy of the files onto a compact disk ("CD") and gave the CD to the police. Burns testified that the recordings were made when the recorder was placed in the window of their bedroom.

¶ 6. The Burns-Barrs moved for summary judgment. They argued that the Postons had failed to produce facts supporting the only potentially relevant grounds for invasion of privacy: intrusion upon the privacy of another and publicity concerning the private life of another. *See* WIS. STAT. § 995.50(2)(a) & (c). Section 995.50(2) provides in relevant part:

In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

. . .

---

[8] At trial, Karen acknowledged that on one occasion, she yelled "get a job." She testified that she "probably" called Burns a "fruitcake."

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

¶ 7. In response, the Postons argued that the motion for summary judgment should be denied. As relevant to this appeal,[9] they argued that the Burns-Barrs' conduct was a violation of WIS. STAT. § 995.50(2)(a), intruding on the privacy of another. The Postons disputed the Burns-Barrs' deposition testimony that the recordings were made with a fifty-dollar digital recorder. They explained:

> The [Burns-Barrs] contend ... that they simply recorded conversations that migrated into their home and claim there is no evidence to the contrary. Well to the extent that a jury can apply common sense, there does exist compelling evidence. Many of the recorded conversations occurred during cold weather (you can actually hear the Poston[s'] furnace running) when presumably the combination windows of the ... home would be closed. Ms. Burns testified that she placed the recorder inside the combination windows in her bedroom . . . . The CD containing the recorded conversations reveals that the Postons were speaking in a conversational tone and level. In addition, [one] can hear ambient sounds such as the microwave beeping, the furnace running and even the telephone being

---

[9] The Postons ultimately did not submit to the jury their claim that the Burns-Barrs had invaded their privacy contrary to WIS. STAT. § 995.50(2)(c). Therefore, we do not discuss the arguments or evidence relating to that abandoned claim.

dialed![10] It is simply ludicrous to contend that [these noises that] . . . occurred in the Postons' home—behind closed doors and combination windows—could be recorded by a $50 micro-cassette recorder from behind the combination windows of another house across a driveway without specialized equipment! A jury does not need proof to ascertain the veracity of the [Burns-Barrs'] deposition testimony in this regard. But just in case it does, [the Postons] will provide evidence of attempts to replicate the process at trial.

¶ 8. In their reply brief on their motion for summary judgment, the Burns-Barrs argued that their testimony that a fifty-dollar recorder was used to make the recordings was uncontroverted, and that there is no proof that the recordings were made in any other manner. The Burns-Barrs took issue with the Postons' stated plan to "provide evidence of attempts to replicate the process at trial," noting that the Postons were required to provide such evidence prior to trial.

¶ 9. At oral argument on the Burns-Barrs' motion for summary judgment, trial counsel for the Postons again asserted that the jury could listen to the audio recordings and decide whether they were made with a fifty-dollar recorder. Trial counsel stated:

I can't prove they used any specialized equipment, Your Honor. That is information that is wholly within the realm of the defendants. There's no way to prove that, you know. But . . . through . . . the mere applica-

---

[10] Precisely what sounds were recorded was a matter debated at trial. Although the digital recordings have been included in the record, it is not clear which digital files were played at trial, and we have not attempted to determine whether the alleged sounds listed in the parties' summary judgment briefs could indeed be heard in the recordings that were played to the jury.

tion of common sense, [I can] prove that this machine, or something substantially similar, didn't do it. And . . . I think that the reality of it is that the [Burns-Barrs'] testimony on this point is so incredible.

So we go to the statutory criteria for the invasion of privacy. Would, if they used specialized equipment, or however they were able to record . . . [these] everyday family conversations in someone else's home . . . would that be highly offense to a reasonable person?

. . . .

. . . I think a jury can use their life experiences and their common sense and demonstrations in court to ascertain whether or not it's reasonable to believe that, in the circumstances here, personal private family conversations were recorded from another's home on this recorder.

¶ 10. The trial court denied the Burns-Barrs' motion for summary judgment. Its ruling on the evidence concerning the recording device used was as follows:

I do think that a reasonable jury could conclude, based on this summary judgment record, that in fact the manner in which . . . these recordings were secured was something other than simply placing a recorder that only picked up sounds emanating from and into the home of the [Burns-Barrs].

Circumstantially, given what's on those tapes and given the logistics that are involved here, given what is asserted to be the mechanism by which the sounds were recorded, I think a jury may ultimately conclude, certainly could ultimately conclude that something other than that recorder was used, and by inference, that some type of sophisticated electronic recording equipment was used, which would lead to the conclusion that they are in fact electronically invading the residence of the [Postons] and that that's an actionable trespass, it's . . . a highly offensive intrusion into their home, et

411

cetera, and I think that resolving that claim by summary judgment is inappropriate for that reason.

¶ 11. The case proceeded to trial. At trial, the jury heard portions of the audio recordings, including parts of four conversations. For instance, the tapes include Barry saying he was going to go wash his truck and buy oil for it, which Barry testified was a statement he made just inside his back door. In another instance, Karen can be heard talking to a neighbor while Karen was gardening outside.

¶ 12. The Burns-Barrs testified about the recordings they made from their bedroom window. Barr said the recordings were made with "a simple Olympus recorder that we got at Radio Shack."[11] He said sometimes the recorder was placed on the window sill, and other times the Burns-Barrs would connect an external microphone to the recorder that would "go underneath the crack in the window," between the outside of the window and the inside of the screen.

¶ 13. After both parties rested, the Burns-Barrs moved for a directed verdict. They asserted that there was no evidence that they trespassed on the Postons' property; the trial court agreed. Next they asserted that there was no intrusion conducted in a place that a reasonable person would consider private, see WIS. STAT. § 995.50(2)(a), because the recordings were made in the Burns-Barrs' own bedroom (more accurately, from the window sill). In response, the Postons argued:

> [W]e do believe there was some type of directional [microphone] used, would have to be used, and that with this [microphone] they were able to [pick up]

---

[11] At trial it was also referred to as a "$50.00 Radio Shack digital recorder."

conversations that occurred in the household . . . . And I think I told you all along, Judge, I can't prove, don't have any way of proving that they used highly sophisticated equipment; no, I don't.

And I have talked to sound experts trying to recruit a sound expert . . . . [T]here isn't an expert that can tell you what type of equipment was used for recording and the scientific inquiry regarding proof of that nature would be extraordinar[il]y complex, and expensive . . . .

But what I did argue in the summary judgment motion, what I'm arguing today is that I think the jury can decide whether or not they believe that [the Burns-Barrs'] tiny recorder is able to [pick up] conversations with such clarity that occurred in the house . . . .

¶ 14. The trial court denied the motion for directed verdict, concluding that if a person:

make[s] an active attempt to record conversations without the knowledge of the source of the conversation, that it's occurring in a private place and would otherwise be private, I don't think there is some affirmative obligation on the part of the [person having the conversation] to protect their conversation particularly in a place where they expect to have privacy. And I think that electronically recording those conversation[s] is an intrusion in a place that is considered private by the people who have the right of privacy.

¶ 15. The jury was asked three questions on the special verdict:[12]

---

[12] On appeal, the Burns-Barrs argue that the special verdict questions were improper. Because we decide this case on other grounds, we do not consider the wording of the special verdict. However, we note that we share some of the Burns-Barrs' concerns, and this opinion should not be read as implicitly approving the special verdict form that was used.

Question No. 1: Did Andrea Burns and James Barr invade the privacy of Karen and Barry Poston by recording conversations and other sounds emanating from the Poston[s'] property?

If your answer to question 1 is "yes", answer question 2. If your answer to question 1 is "no", disregard questions 2 and 3.

Question No. 2: Did Andrea Burns and James Barr record conversations and other sounds emanating from the property of the Poston[s] in the good faith and reasonable exercise of the privilege to document harassment or other interference with the peaceful enjoyment of their home?

Answer this question if your answer to question 2 is "no". If your answer to question 2 is "yes", disregard question 3.

Question 3: What sum of money, if any, will fairly and reasonably compensate the plaintiffs, Karen and Barry Poston[,] for the invasion of their privacy?

(Bolding, underlining and some capitalization omitted.) The jury's answers to these questions were: yes, no and "Poston[s'] litigation expenses for this trial ONLY."

¶ 16. The Burns-Barrs filed several post-trial motions challenging the sufficiency of the evidence and the awarding of attorney fees where no actual damages were found; all of the motions were denied. Judgment was entered for the Postons in the amount of $41,080.23, including $33,806.90 in attorney fees and the remainder as costs. This appeal follows.

## DISCUSSION

¶ 17. The Burns-Barrs present four arguments on appeal: (1) their motion for a directed verdict should have been granted after the Postons "failed to deliver on representations that allowed them to avoid summary judgment"; (2) they are entitled to a new trial in the

414

interest of justice based on erroneous language in a jury instruction and in the special verdict; (3) the Postons were not entitled to an attorney fee award where no actual damages were awarded and the Postons had a contingency fee arrangement; and (4) the Burns-Barrs should not have been ordered to pay statutory interest on the attorney fee award. The Burns-Barrs ask this court to vacate the judgment and remand with instructions that the trial court dismiss the matter with prejudice. In the alternative, they seek a new trial. For the reasons outlined below, we conclude that there is no competent evidence in the record which supports a finding that the Burns-Barrs violated WIS. STAT. § 995.50(2)(a). Therefore, we reverse and remand with directions to enter judgment in favor of the Burns-Barrs.

¶ 18. Beginning with their motion for summary judgment and through their post-trial motions, the Burns-Barrs asserted that the Postons should not be allowed to argue that the Burns-Barrs had to have used a more sophisticated recording device to capture conversations that the Postons claim took place in their home, given the lack of any competent testimony that a different recorder was or had to have been used. The trial court was not persuaded by the Burns-Barrs' argument. At the summary judgment motion hearing, the trial court concluded, as quoted in paragraph 10 above, that a jury could determine that a different recording device was used, even though there was no affirmative evidence of a different recorder and no expert had opined that the recording device used could not have produced the recordings.

¶ 19. Consistent with the trial court's ruling, the Postons' trial theory included their assertion that the Burns-Barrs had used a more sophisticated recording device, which was relevant to whether the alleged

intrusion—making the recordings—was "of a nature highly offensive to a reasonable person." *See* Wis. Stat. § 995.50(2)(a). The Postons' trial counsel in his opening statement told jurors that they would hear recordings of "people sitting down in their kitchen having a normal conversation" and that the jurors should ask themselves, "[H]ow did they record this?" During the trial, Barry offered testimony concerning his opinion about the method of recording. He said he did not believe the Burns-Barrs' recorder had been used to make the recordings, and he testified with respect to a recording of a particular conversation: "I don't believe a microphone has the capab[ility] of doing that through the [window] glass."

¶ 20. In closing, the Postons' trial counsel told the jury that "my clients [the Postons] . . . don't believe that [the recording] was done . . . with a digital recorder placed in the window sill." Trial counsel asked, "Do you want us honestly to believe that they were able to make recordings of that quality with just that Olympus recorder?" Trial counsel also speculated that the Burns-Barrs might have used a specialized microphone to make the recordings, stating:

> Now, there are microphones that allow you to direct a microphone and I'm not an expert on all that kind of stuff, but I've seen them. In the NFL they have specialized microphones . . . . I guess [football teams] use that, steal defense signals of other teams or something like that. But you know, I don't know what there might have been . . . . I have no way of knowing. There's no possible way for us to know because we don't have the equipment. We don't know what equipment they have.

¶ 21. We conclude that the trial court erred when it concluded—first in denying the Burns-Barrs' motion

416

for summary judgment and later when denying their motion for directed verdict—that the Postons could present to the jury their "belief" that a more sophisticated recorder was used to make the recordings. There was no competent evidence to support that argument. The Postons, as lay witnesses, established no competency to testify about the recording capabilities of digital recorders or microphones, or other rational basis for the "belief" they expressed and which formed the factual basis for their case.

■

¶ 22. WISCONSIN STAT. § 907.01 describes when a lay person can offer opinion testimony:

**Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

The Judicial Council Committee's Note to this statute points out that "[t]he recent Wisconsin cases are in accord with this section . . . . *The rule does not allow the lay witness to testify when the subject of his testimony requires expertise.*" Judicial Council Committee's Note to § 907.01, 52 Wis. 2d R205 (1974) (emphasis added). Lay opinion evidence is generally permitted when such opinion is based on matters about which the witness is actually competent to testify, such as: personal observations by the lay witness, *see York v. State*, 45 Wis. 2d 550, 558–59, 173 N.W.2d 693 (1970) ("A witness is generally permitted to testify about a personal experience or knowledge of a sensation, although the witness' answer is his opinion of the matter") (permitting testimony about the similarity between the color, weave,

and shape of a piece of cloth and a hole in a coat); the witness's personal experience, *see State v. Johnson*, 54 Wis. 2d 561, 565, 196 N.W.2d 717 (1972) ("Experience is a proper basis for giving an expert opinion as well as technical and academic training.") (allowing a frequent user of LSD to testify that the pill received from the defendant was LSD); the witnesses' opinion as to value of property the witness owns, *see Wilberscheid v. Wilberscheid*, 77 Wis. 2d 40, 48, 252 N.W.2d 76 (1977) (an owner is competent to give opinion evidence on value); and the witness's medical symptoms and treatment, *see Heiting v. Heiting*, 64 Wis. 2d 110, 118, 218 N.W.2d 334 (1974) ("A party to a divorce action can testify as to his or her medical history, his or her own objective and subjective symptoms and the medical treatments received.").

¶ 23.　However, lay opinion evidence is not without specific requirements. In *Black v. General Electric Co.*, 89 Wis. 2d 195, 212, 278 N.W.2d 224 (Ct. App. 1979), we refused to permit a lay person with decades of experience repairing television sets to offer an opinion on whether defective design of a particular television caused a fire. We explained the limits of lay expert testimony:

> Opinion evidence of lay witnesses regarding matters within their field of expertise is generally held to be competent, and the probative force of such testimony is for the trier of the fact. The opinions are valid even though such opinions are not based upon technical or academic knowledge but upon expertise gained from experience. A lay expert is one whose expertise or special competence derives from experience working in the field of endeavor rather than from studies or diplomas. Indeed, experience in some cases may be the most important element of expertise. "Whether an

418

opinion of a witness may be given depends upon his superior knowledge in the area in which the precise question lies."

*Id.* (citations omitted).

¶ 24. Here, the Postons' case was premised on their "belief" that the fifty-dollar Olympus recorder was not the one used to record the Postons' behavior in relation to the Burns-Barrs. There is not a scintilla of evidence in the record to demonstrate any knowledge whatsoever by the Postons as to the technical capacity of the disputed recorder, or any other electronic recorder. The Postons offered no personal experience, no academic or technical training and no competent expert testimony to support their "belief" that something more sophisticated must have been used. Moreover, both of the Postons acknowledged at trial that they had no affirmative evidence that another recorder had been used. Nonetheless, at the summary judgment argument, the trial court accepted the Postons' argument that a jury could use its "common sense" to determine the technical capacity of the recorder in evidence and the Postons were permitted to offer their lay opinions that another recorder had to have been used. This was error.

¶ 25. The erroneous admission of the Postons' lay opinions allowed their trial counsel to invite the jury to speculate that a different recorder had been used. Trial counsel asked the jury to rely on the Postons' stated "belief" that the recordings were not made with a digital recorder placed on the window sill, even after trial counsel told the trial court outside the jury's presence that he "can't prove, don't have any way of proving that [the Burns-Barrs] used highly sophisticated equipment; no, I don't." This was improper, because a jury may not be

invited, or encouraged, to speculate on matters which are not of common knowledge, and as to which there is not a scintilla of competent evidence in the record. *See Schulz v. St. Mary's Hospital*, 81 Wis. 2d 638, 658, 260 N.W.2d 783 (1978) (" 'Verdicts cannot be permitted to rest upon speculation or conjecture.' ") (citation omitted). The technical capacity of a common, inexpensive electronic recording device—including whether it can record sounds emanating from a home next door—is manifestly not a matter within the knowledge and experience common to every member of the community.

¶ 26. Given the lack of competent evidence that the Burns-Barrs used a more sophisticated recording device, the next issue is whether the Burns-Barrs' motion for directed verdict should have been granted. We stated the applicable standard of review in *Warren v. American Family Mutual Insurance Co.*, 122 Wis. 2d 381, 361 N.W.2d 724 (Ct. App. 1984):

> The standard of review upon the denial of a motion for directed verdict is whether, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion was made, there is any credible evidence to sustain a finding in favor of that party. If there is any credible evidence to sustain a cause of action, the case must be submitted to the jury. Except in the clearest of cases, a trial judge should withhold ruling on a directed verdict and permit the question to go to the jury.

*Id.* at 384 (citations omitted).

¶ 27. Here, the only competent evidence in the record concerning the actual recording process is the Burns-Barrs' testimony that they placed the handheld digital recorder on the window sill of their bedroom, sometimes attaching to the recorder a microphone that

was placed between the window and the window screen. Although the Postons' appellate arguments focus primarily on their theory that the jury found that the Burns-Barrs used something other than the Olympus recorder, the Postons do offer two sentences of argument suggesting that the Burns-Barrs violated the Postons' privacy when they placed a microphone and recording device on their window sill and captured sounds coming from the Postons' home. However, the Postons offer no case law to support the legal theory that recording sounds that emanate from a neighboring property, using a common recording device that is placed inside one's own window, constitutes an invasion of privacy, and we have not found any such cases. Rather, successful invasion of privacy cases in other jurisdictions that involved audio recording included allegations that microphones were planted in the individual's home or elsewhere. *See, e.g., Roach v. Harper*, 105 S.E.2d 564 (W. Va. 1958) (plaintiff stated cause of action for invasion of privacy where she alleged landlord installed listening device in her apartment and listened to her private conversations); *McDaniel v. Atlanta Coca-Cola Bottling Co.*, 2 S.E.2d 810, 816 (Ga. Ct. App. 1939) (electronic eavesdropping on hospital room conversations is intrusion). Here, there was no allegation that the Burns-Barrs trespassed on the Postons' property in any way or "bugged" their home.[13]

¶ 28. Looking at the facts in a light most favorable to the Postons, we conclude that those facts do not support a finding that the Burns-Barrs' conduct vio-

---

[13] Indeed, on cross-examination Karen indicated she was not alleging that the Burns-Barrs went onto the Postons' property to record them or "bugged" their home.

lated Wis. Stat. § 995.50(2)(a). The recording of sounds emanating from the Postons' home using a common recording device that was placed inside the Burns-Barrs' own window was not, as a matter of law, an intrusion "of a nature highly offensive to a reasonable person." *See id.* Therefore, the Burns-Barrs' motion for directed verdict should have been granted. *See Warren,* 122 Wis. 2d at 384. We reverse and remand with instructions that the trial court enter judgment in favor of the Burns-Barrs.

*By the Court.*—Judgment reversed and cause remanded with directions.