COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1519-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF890

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIE G. ALLISON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Willie Allison appeals a judgment, entered upon a jury's verdicts, convicting him of three counts of human trafficking, as a repeater;

one count of second-degree reckless injury, as a repeater; two counts of delivering three grams or less of heroin, as a second or subsequent offense, with one count as a party to a crime; and one count of maintaining a drug trafficking place, as a second or subsequent offense. Allison also appeals the order denying his postconviction motion, which sought a new trial or, in the alternative, resentencing.

¶2 Allison argues that the State engaged in prosecutorial misconduct related to the cross-examination of a witness; the circuit court erroneously exercised its discretion by limiting cross-examination of the same witness; the evidence was insufficient to support his conviction for second-degree reckless injury; and he was denied the effective assistance of trial counsel. Allison also claims that the court erroneously exercised its sentencing discretion, and that he is entitled to resentencing with a new presentence investigation report ("PSI"). Finally, Allison contends that the court erred by denying his motion for a new trial without an evidentiary hearing. We reject Allison's arguments, and we affirm the judgment and order.

## BACKGROUND

¶3 The charges against Allison arose from allegations that he forced three women—Melissa, Debra, and Susan[1]—to engage in prostitution by using physical violence, threats of physical violence, and their heroin and cocaine

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we refer to the victims by pseudonyms.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

addictions to control them. The State further alleged that police and medical personnel responded to what turned out to be Debra's drug overdose at Allison's home on Durkee Street in Appleton. According to the complaint, Debra overdosed on heroin that Allison gave her, but she regained consciousness following the administration of Narcan. The State also alleged that Allison and an associate, Marcell Brown, sold heroin to a confidential informant with whom they met in the parking lot of the Outagamie County Justice Center. Multiple witnesses reported that Allison also sold heroin and cocaine from his home.

¶4 After a multi-day trial, a jury convicted Allison of the crimes charged. Out of a maximum possible 136-year sentence (with the repeater enhancements), the circuit court imposed consecutive sentences resulting in a ninety-year term, consisting of sixty years' initial confinement and thirty years' extended supervision. Allison's postconviction motion for a new trial or for resentencing was denied without a hearing. This appeal follows.

## DISCUSSION

### A. Prosecutorial Misconduct

¶5 Allison argues that the prosecutor engaged in misconduct by objecting to evidence of Melissa's probationary status, prior convictions, and conditions of her probation, which Allison offered to show an underlying reason for Melissa's incriminating testimony. Whether prosecutorial misconduct occurred and whether such conduct requires a new trial are within the circuit court's discretion. *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996).

¶6      Before trial, the State disclosed that Melissa was placed on probation in three Outagamie County cases on April 4, 2017—more than six months before the complaint was filed in Allison's case.  The State provided defense counsel with the sentencing hearing transcript from Melissa's cases, and it further disclosed that Melissa had an open criminal referral that the State did not intend to charge.  At a pretrial conference, the State asserted that the disclosed information regarding Melissa was irrelevant because her cases were "long settled" prior to the charges against Allison.  The circuit court acknowledged that defense counsel could cross-examine witnesses regarding any concession received in exchange for testimony.  It determined, however, that "[i]f there's some case that's remote that was resolved a long time before this case even started and there's no link, that should not be brought up[.]"  After jury selection, the court reiterated that if defense counsel wished to cross-examine the witnesses regarding any consideration they allegedly received beyond the scope of their proffer letters, he needed to submit an offer of proof.  The record does not reflect that defense counsel did so.

¶7      At trial, defense counsel repeatedly attempted to cross-examine Melissa regarding her probationary status and prior arrests.  The prosecutor objected, and the circuit court, consistent with its pretrial ruling, sustained the objections.  Citing *State v. White*, 2004 WI App 78, ¶25, 271 Wis. 2d 742, 680 N.W.2d 362, *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), Allison asserts that the prosecutor committed misconduct by denying him his due process right to present evidence.

¶8      Allison's reliance on these cases is misplaced.  *White* involved a prosecutor's failure to disclose evidence, which is not at issue in this case.  *See White*, 271 Wis. 2d 742, ¶22.  *Chambers* involved the review of a Mississippi

4

common-law rule that a party may not impeach his or her own witness, *Chambers*, 410 U.S. at 295, and *Crane* held that a blanket exclusion of proffered testimony about the circumstances of a defendant's confession deprived him of a fair trial, *Crane*, 476 U.S at 690. Ultimately, Allison provides no citation to case law suggesting that a prosecutor's trial objection to the admission of fully-disclosed but irrelevant evidence constitutes prosecutorial misconduct.

## B. Circuit Court Limitation on Cross-Examination

¶9     Allison relatedly argues that the circuit court erroneously exercised its discretion by precluding defense counsel from cross-examining Melissa regarding any effect of her probationary status and conditions of probation on her testimony. A circuit court's decision to limit cross-examination is reviewed for an erroneous exercise of discretion. *State v. Rhodes*, 2011 WI 73, ¶24, 336 Wis. 2d 64, 799 N.W.2d 850. Beyond Melissa's admission to eight prior convictions and the admission of her proffer letter from the State,[2] Allison sought to cross-examine Melissa about the details of her prior cases as well as her probationary status.

---

[2] The letter, dated November 15, 2017, provided, in relevant part:

> The State will not use any proffered information [Melissa] provides related to the criminal activities of Willie Allison and others, not already in our possession, to prosecute [Melissa] for charges which are premised on the proffered statements. This does not preclude the State from using against [Melissa] statements [Melissa] has made prior to the date of this agreement, or any information that the State has obtained or may obtain independent of [Melissa]'s statements.

(continued)

¶10 The circuit court properly excluded cross-examination on cases resolved long before Allison's case commenced, as Melissa's testimony in the present matter could not have benefitted her in the prior cases. Defense counsel nevertheless asserts that Melissa may have believed "she needed to testify either falsely, inaccurately or with exaggeration, respectively, in order to comply with the terms of her probation." The State's proffer letter to Melissa, however, explicitly required her to tell the truth. In any event, Allison's claim is based on unsubstantiated speculation, and our supreme court has held that "a defense inquiry based upon [a] purely speculative theory is too far afield of any rational relationship to the truthful character of the witness or [the witness]'s testimony." *State v. McCall*, 202 Wis. 2d 29, 40, 549 N.W.2d 418 (1996).

## C. Sufficiency of the Evidence

¶11 Next, Allison argues the evidence at trial was insufficient to support his conviction for second-degree reckless injury arising from Debra's heroin overdose. Whether the evidence supporting a conviction is direct or circumstantial, we utilize the same standard of review regarding its sufficiency. *State v. Poellinger*, 153 Wis. 2d 493, 501-02, 451 N.W.2d 752 (1990). We must uphold Allison's conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found

The statements also may be used against [Melissa] in a prosecution related to obstructing, perjury, or a similar charge related to the integrity of the investigative or criminal justice process, if the information provided proves false, or if [Melissa] later testifies untruthfully in a matter related to the subject of the statements. The information provided by [Melissa] must be complete and truthful.

6

guilt beyond a reasonable doubt." *See id.* If there is a possibility that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we must uphold the verdict even if we believe that the jury "should not have found guilt based on the evidence before it." *Id.* at 507.

¶12 It is the jury's function to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). If more than one inference can be drawn from the evidence, this court will follow the inference that supports the jury's finding "unless the evidence on which that inference is based is incredible as a matter of law." *Poellinger*, 153 Wis. 2d at 506-07. A jury is free to piece together the bits of testimony it found credible to construct a chronicle of the circumstances surrounding the crime. *See State v. Sarabia*, 118 Wis. 2d 655, 663-64, 348 N.W.2d 527 (1984). Further, "[f]acts may be inferred by a jury from the objective evidence in a case." *Shelley v. State*, 89 Wis. 2d 263, 273, 278 N.W.2d 251 (Ct. App. 1979).

¶13 To find Allison guilty of second-degree reckless injury, the State was required to prove that Allison caused death or great bodily harm to Debra by criminally reckless conduct. *See* WIS. STAT. § 940.23(2). "[C]riminal recklessness means the actor creat[ed] an unreasonable and substantial risk of death or great bodily harm … and the actor [was] aware of that risk." WIS. STAT. § 939.24(1). Allison argues the evidence was insufficient to prove he was actually aware that his delivery of heroin to Debra created a risk of overdose. We disagree.

¶14 At trial, Susan testified that the heroin Allison gave to Debra was "very pure," as Allison had not "cut this heroin with anything." According to Susan, Allison was aware that Debra had just been incarcerated for weeks thereby

7

reducing her heroin tolerance. Debra also testified that Allison had cautioned her to "not do too much [heroin], because of the chance of overdose." Debra added that Allison's usual practice, which he followed on the night of the overdose, was to hand her only the amount of heroin that she was going to immediately use.

¶15     Putting all the evidence together, and viewing it in the light most favorable to the guilty verdict, a reasonable jury could conclude that Allison was aware of the unreasonable and substantial risk of death or great bodily harm created by his delivery of heroin to Debra. The evidence submitted at trial is sufficient to support the challenged conviction.

*D. Sentencing Discretion*

¶16     Next, Allison argues that the circuit court erroneously exercised its sentencing discretion. Sentencing lies within the circuit court's discretion. *See State v. Echols*, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). The sentence imposed should be the minimum amount of confinement that is consistent with three primary sentencing factors: (1) the gravity of the offense; (2) the character of the defendant; and (3) the need to protect the public. *See State v. Gallion*, 2004 WI 42, ¶¶23, 59-61, 270 Wis. 2d 535, 678 N.W.2d 197. The weight to be given each of the primary factors is within the discretion of the sentencing court, and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. *See State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). Although the court should explain the reasons for the particular sentence imposed, "[h]ow much explanation is necessary … will vary from case to case." *Gallion*, 270 Wis. 2d 535, ¶39. "[T]he exercise of discretion does not lend itself to mathematical precision." *Id.*, ¶49. Rather, the

sentencing court must provide an explanation for the general range of the sentence. *Id.*

¶17 Allison contends that his aggregate sentence is unduly harsh and excessive, and the circuit court erroneously exercised its discretion by failing to explain how the sentencing factors justified sixty years of initial confinement. To the extent Allison argues that given his age, his sentence is tantamount to a life sentence, the court is not required to consider a defendant's life expectancy at sentencing. *See State v. Stenzel*, 2004 WI App 181, ¶20, 276 Wis. 2d 224, 688 N.W.2d 20. When a defendant argues that his or her sentence is unduly harsh or excessive, we will hold that the sentencing court erroneously exercised its discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). There is a presumption that Allison's sentence, which is well within the maximum allowed by law, is not unduly harsh or unconscionable, nor "so excessive and unusual" as to shock public sentiment. *See State v. Grindemann*, 2002 WI App 106, ¶¶31-32, 255 Wis. 2d 632, 648 N.W.2d 507. Allison does not point to anything in the record that would lead us to conclude that presumption has been overcome.

¶18 Further, the record shows that the circuit court considered the proper sentencing factors and explained why the sentence was appropriate. The court noted that it placed less emphasis on then-thirty-nine-year-old Allison's rehabilitative needs given his extensive criminal history and past opportunities for rehabilitation. The court explained that it deemed the protection of the public and the gravity of the offenses to be the most important factors in this case,

9

emphasizing the "immeasurable" impact Allison's crimes had on Susan, Debra and Melissa. Ultimately, the court determined that given the "extremely aggravated" nature of the crimes, "significant confinement was needed to protect the public from further criminal activity by this defendant." Because the court considered the proper factors when imposing sentence, we conclude that it did not erroneously exercise its sentencing discretion.

*E. Presentence Investigation Report*

¶19    Allison alternatively claims that he is entitled to resentencing with a new PSI prepared by a "neutral agent." Allison asserts that the PSI writer "had a 'treatment' relationship with [Melissa] between 3/29/18 and 5/10/18 while apparently employed by [the Department of Corrections]." A biased PSI may violate a defendant's due process right to a fair sentence hearing, though the defendant bears the burden of demonstrating that the PSI writer was biased. *State v. Suchocki*, 208 Wis. 2d 509, 516, 518, 561 N.W.2d 332 (Ct. App. 1997), *abrogated on other grounds by State v. Tiepelman*, 2006 WI 66, ¶31, 291 Wis. 2d 179, 717 N.W.2d 1.

¶20    The State acknowledges that a close emotional relationship between the PSI writer and a person involved in the criminal case may be sufficient to taint the objectivity of the PSI. In *Suchocki*, for example, the PSI writer was married to the prosecutor, and this court held that this marital relationship created a conflict of interest that rendered the PSI writer biased. *Id.* at 509, 513. This court has likewise held that a mental health professional's "extensive treatment relationship" with a victim created a conflict of interest calling into question the objectivity of an evaluation that was incorporated into the PSI. *See State v. Stafford*, 2003

WI App 138, ¶¶6, 11, 265 Wis. 2d 886, 667 N.W.2d 370, *abrogated on other grounds by* **State v. Harbor**, 2011 WI 28, ¶52, 333 Wis. 2d 53, 797 N.W.2d 828.

¶21    Here, the PSI writer disclosed before trial that as part of her role as a probation and parole agent, she was involved with human trafficking outreach efforts in the community, and she was also assigned to supervise individuals involved in human trafficking, which included supervising human trafficking survivors who were receiving treatment in residential programs.  It was in this supervisory capacity that the PSI writer had three face-to-face meetings with Melissa over the course of approximately six weeks.

¶22    There is nothing in the record to suggest that the writer herself provided any sort of clinical treatment to Melissa.  Because there is no evidence of an improper relationship necessitating disqualification of the PSI writer, Allison fails to show that his due process rights were violated by a biased PSI.

*F.  Ineffective Assistance of Counsel*

¶23    Allison raises several challenges to the effectiveness of his trial counsel and he argues that he was entitled to an evidentiary hearing on his claims. However, a defendant who alleges ineffective assistance of counsel is not automatically entitled to an evidentiary hearing.  To obtain an evidentiary hearing, the defendant's motion must allege, with specificity, both that counsel provided deficient performance and that the deficiency was prejudicial.  **State v. Bentley**, 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996).  If the motion alleges facts that would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing.  **Id.** at 310.  Whether a motion alleges facts that, if true, would entitle a defendant to relief is a question of law that we review independently.  **Id.**

¶24    If the factual allegations of the motion are insufficient or conclusory, or if the record irrefutably demonstrates that the defendant is not entitled to relief, the circuit court may, in its discretion, deny the motion without a hearing.  *Id.* at 309-10.  When reviewing a circuit court's discretionary act, this court utilizes the deferential erroneous exercise of discretion standard.  *Id.* at 310-11.

¶25    To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one.  *See id.* at 697.  This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law.  *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999).  The circuit court's findings of fact will not be disturbed unless they are clearly erroneous.  *Id.* However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law that this court reviews independently.  *Id.*

¶26    In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  A defendant proves prejudice by demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish

12

prejudice in ineffective assistance cases." ***State v. Sholar***, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing ***Strickland***, 466 U.S. at 693). Thus, "a defendant need not prove the jury *would have* acquitted him [or her], but he [or she] must prove there is a *reasonable probability* it would have, absent the error." ***Id.***, ¶46.

¶27 The question for this court on review is whether Allison's postconviction motion was sufficient to entitle him to a hearing, so we review "only the allegations contained in the four corners of [the] postconviction motion," not the allegations in any brief. *See* ***State v. Allen***, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433. First, Allison's postconviction motion alleged his counsel was ineffective by conceding Allison's guilt "on one or more counts" during closing argument, without obtaining Allison's agreement and without specifying which counts were conceded or why the concession was made. Specifically, Allison challenges the following portion of defense counsel's closing argument:

> [T]here's some things in these jury instructions and the verdict—they're going to say the defendant is guilty of that. I don't think you're going to have a problem answering a few of these in all honesty. Some of these things like drug house. Think about that now. Okay. Some of these things you might be able to answer relatively pretty quick.

¶28 The United States Supreme Court has recognized that "[w]hen a client expressly asserts that the objective of 'his [or her] defen[s]e' is to maintain innocence of the charged criminal acts, his [or her] lawyer must abide by that objective and may not override it by conceding guilt." ***McCoy v. Louisiana***, 138 S. Ct. 1500, 1509 (2018). There, in an attempt to avoid the death penalty, counsel told the jury "my client committed three murders," despite the defendant's repeated insistence that he did not want to concede guilt. ***Id.*** at 1507. Because the

13

defendant in *McCoy* "adamantly objected to any admission of guilt," the Court held that his right to effective assistance of counsel was violated. *Id.* at 1505.

¶29 Here, Allison's postconviction motion did not allege or show that counsel conceded guilt over Allison's objection. Rather, the motion alleged only that counsel conceded guilt "without obtaining his client's agreement." Even assuming this assertion is true, Allison would not be entitled to relief unless he objected to the concession before or at trial. *Id.* at 1509. Ultimately, the postconviction motion failed to allege sufficient facts to show that counsel was deficient in this regard.

¶30 Second, Allison argues that his trial counsel was ineffective by failing to "properly and fully" object to improper lay opinion testimony related to the State's allegation that Allison was a party to the crime of delivering heroin to a confidential informant. During a jail phone call in which Allison discussed Brown's meeting with the confidential informant, Allison stated, "I thought he was good." Jonathan Cvengros, a sheriff's investigator, testified at trial that the fact Allison believed the confidential informant "was good" suggested to Cvengros that he was aware of the drug transaction. According to Allison, this testimony allowed the officer to operate as a "'super' juror," providing an inculpatory interpretation of an ambiguous telephone remark.

¶31 Defense counsel objected to the challenged testimony on relevance grounds, and his objection was overruled. Ultimately, Allison fails to establish that Cvengros's testimony was improper. Lay opinion testimony is generally permitted when it is "rationally based on the perception of the witness." *Poston v. Burns*, 2010 WI App 73, ¶22, 325 Wis. 2d 404, 784 N.W.2d 717. Here, Cvengros listened to Allison's jail call and gave his opinion, based on his own observations,

14

as to whether Allison's remark suggested awareness of Brown's heroin transaction.

¶32 Third, Allison claims his counsel was ineffective by failing to "effectively establish" that Brown was working alone when he delivered heroin to the confidential informant. Allison claimed that he drove to the justice center to visit someone, and he had no knowledge that Brown was going to deliver heroin. Allison appears to be arguing that Brown and the confidential informant arranged the heroin transaction while Allison was already driving to the justice center for a different and lawful purpose, thus establishing that Allison was unaware of the transaction. This argument is based on a misunderstanding of the record and ignores the video evidence of Allison's involvement in the transaction.

¶33 The record on appeal shows that the call arranging to meet the confidential informant in the justice center parking lot was at least the second call between Brown and the informant that day. The buy was previously arranged to take place at Allison's residence, from which Allison and Brown left to go to the justice center. This record does not support the inference that Brown suddenly arranged the transaction on the way to the justice center and without Allison's knowledge. Further, security video showed Allison, Brown and the confidential informant standing within feet of one another before Brown departed in the informant's car to complete the transaction. Therefore, any attempt on defense counsel's part to establish that Brown acted alone would have failed.

¶34 Fourth, Allison contends his counsel was ineffective by failing to overcome the State's objection to cross-examination based on Melissa's probationary status. As discussed above, the circuit court properly limited cross-examination on this topic. An attorney "does not perform deficiently by

failing to make a losing argument," *see State v. Jacobsen*, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365 (2013), and Allison cites no legal authority to suggest that an attorney performs deficiently merely because the circuit court ruled against him on an evidentiary issue.

¶35     Allison relatedly argues that his counsel was ineffective by failing to move for a mistrial on the grounds of prosecutorial misconduct in objecting to cross-examination questions related to Melissa's probationary status.   As discussed above, Allison cites no authority to support his claim that a prosecutor engages in misconduct merely by objecting to evidence that he or she believes is improper, and the circuit court properly limited Melissa's cross-examination in this regard.   Again, counsel does not perform deficiently by failing to make a losing argument.  *See id.*

¶36     Allison asserts that his counsel was ineffective by failing to request a hearing to investigate the PSI writer's alleged bias based on a purported "treatment relationship," as discussed above.  Defense counsel, however, raised the issue of a potentially biased PSI writer on more than one occasion, even requesting an adjournment at sentencing so a new PSI could be written by a different author.  As noted above, the circuit court proceeded over defense counsel's objection after properly concluding that no bias had been shown.  Once again, an attorney does not perform deficiently by failing to make a losing argument.  *Id.*

¶37     Because the various claims in Allison's postconviction motion failed to allege facts that, if proven, would establish deficient performance or court error, Allison was not entitled to an evidentiary hearing, and the circuit court properly denied the motion.  *See Bentley*, 201 Wis. 2d at 313-18.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.