STATE of Wisconsin, Plaintiff-Respondent,†

v.

Richard G. WHITE, Defendant-Appellant.

Court of Appeals

*No. 03–1132–CR. Submitted on briefs February 4, 2004.—
Decided March 2, 2004.*

2004 WI App 78

(Also reported in 680 N.W.2d 362.)

† Petition to review denied 5-12-04.

742

744

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James Rebholz* of *Rebholz & Auberry*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Richard G. White appeals from a judgment entered on a jury verdict convicting him of armed robbery with threat of force, *see* WIS. STAT. § 943.32(2), and from the trial court's orders denying his motion for postconviction relief. He claims that the trial court erred in determining that: (1) his trial lawyer did not give him prejudicially deficient representation; and (2) the State's failure to timely turn over the criminal-conviction record of the main prosecution witness was harmless. We reverse.

## I.

¶ 2. White was convicted of robbing Dustin John Ehlers on October 12, 2000, when the latter was working the late-night shift in a Milwaukee 7–Eleven convenience store. According to Ehlers, White arrived at the store when he and another clerk, Jennifer Dragan, were smoking in the parking lot. Ehlers entered the store and White followed. Ehlers testified that after they discussed cigars and doughnuts, White forced him to take twenty-two dollars from the cash register by showing Ehlers a small silver automatic gun that White had in his belt underneath his coat. Dragan was outside during all this time.

¶ 3. What Ehlers testified was the robbery part of his interchange with White was recorded by a video camera that was visible by persons in the store, and Ehlers told the jury that he had pointed out the camera to White when White, according to Ehlers, had earlier wanted Ehlers to split a sealed package of cigars. The videotape shows the two of them separated by a counter on which White had placed what appears to be a bag of doughnuts. They talked, and Ehlers took money from the cash register and gave it to White. White then left. No gun is visible on the videotape. Although White's defense was that Ehlers supplied him frequently with marijuana and gave him the money to make up for a "short" in a sale two days earlier, Ehlers denied either knowing White or having seen him before that night.

¶ 4. White testified that Ehlers sold him marijuana some nine or ten times, the last time on October 10, 2000, when he bought marijuana for his sister's birthday party from Ehlers at the 7–Eleven and paid $325 for one-half pound. According to White, he and the others at the party noticed that there was less than

one-half pound, and, on October 12, he returned to the 7–Eleven to try to "settle" things with Ehlers. White testified that a friend of his, Terrell Sonny, who was also at the party, drove him to the 7–Eleven on October 12 but remained in the car. White denied having a gun or threatening Ehlers. Rather, he told the jury that Ehlers voluntarily opened the cash register and gave him the money:

> A. I asked Dustin. I mean, so I tell him, "How are we going to settle this that you came up short on the marijuana?"

> Q. And what does he say?

> A. "No," he said, "Man, he says, you know what? All right, you know, this is how we are going to do this. Look here. This is all that is right here. You can take this. I'm through messing with you." You know. "Don't call me, don't page me no more." And that was that.

Both White's sister, Kenyetta White, and White's cousin, Kenyon Devol Johnson, who were also at the party, testified that White had purchased marijuana for the party and that it was "short."

¶ 5. As noted, the jury convicted White of armed robbery. The trial court sentenced him to a thirty-year term of imprisonment, with twenty years of initial confinement and ten years of extended supervision. In his motion for postconviction relief, White claimed that his lawyer should have called both Sonny and Dragan as witnesses, and that the State should have revealed before the trial that Ehlers was, when he testified against White, on probation under a deferred-judgment of conviction for possessing marijuana as party to a crime, *see* WIS. STAT. §§ 961.41(3g)(b), 939.05, 961.47, entered by the circuit court of Richland County.

748

¶ 6. In support of his motion, White submitted affidavits executed by both Sonny and Dragan. As material here, Sonny averred in his affidavit that "before October 12, 2000," he had purchased marijuana from Ehlers at the 7–Eleven store "approximately 3 to 4 times." Additionally, although it is not mentioned in Sonny's affidavit, Sonny would have, presumably, also corroborated White's contention that Sonny had introduced him to Ehlers before October 12 as a source for marijuana.

¶ 7. Dragan averred in her affidavit, as material here, that although when White entered the store on October 12 it was her "responsibility to attend to this customer, Dustin said he would take care of it"; "[l]ater, [White] walked out of the store, smiled and said 'hi' to me as he walked out [to] the parking lot"; and she was aware that Ehlers "was stealing from the store." White also claimed that his trial lawyer should have sought jury instructions on lesser-included crimes of armed robbery, and faulted his lawyer for not consulting him.

¶ 8. The trial court denied White's motion for postconviction relief in a written decision. It ruled that neither Dragan's assertion that Ehlers had stolen from the store nor Ehlers's probationary status during White's trial was relevant, and that although some of the other matters to which Sonny and Dragan would have testified were relevant, that evidence "could not have deflected the force of the rest of the evidence in the State's case, or shored up the obvious weaknesses in the theory of the defense." The trial court also concluded, after holding a hearing under *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908–909 (Ct. App. 1979), that the decision by White's lawyer not to seek instructions on lesser-included offenses was a matter of trial strategy.

¶ 9. We agree with White that he is entitled a new trial because his lawyer did not present Sonny and Dragan as witnesses, and because the State did not timely disclose that Ehlers was on probation at the time of White's trial. Accordingly, we do not address the issue of whether White's trial lawyer was ineffective in connection with the lesser-included offenses. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

## II.

¶ 10. Every criminal defendant has a Sixth Amendment right to the effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and a coterminous right under article I, section 7 of the Wisconsin Constitution, *State v. Sanchez*, 201 Wis. 2d 219, 226–236, 548 N.W.2d 69, 72–76 (1996). In order to establish that he or she received ineffective assistance of counsel, a defendant must prove: (1) that the lawyer gave deficient representation; and, as a result, (2) the defendant was prejudiced. *Strickland*, 466 U.S. at 687; *Sanchez*, 201 Wis. 2d at 236, 548 N.W.2d at 76. To prove deficient representation, the defendant must show that the lawyer's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990). To prove prejudice, a defendant must show that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. Stated another way, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* 466 U.S. at 694.

¶ 11. Our review of a trial court's resolution of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact. *Johnson,* 153 Wis. 2d at 127, 449 N.W.2d at 848. The trial court's findings of fact will not be disturbed unless they are clearly erroneous. *Ibid.* Whether the lawyer's performance was deficient and prejudicial are questions of law that we review *de novo.* *Id.,* 153 Wis. 2d at 128, 449 N.W.2d at 848. We give special scrutiny to a defendant's claim that he or she was prejudiced by what the lawyer did or did not do when the case is close. *State v. Smith,* 2003 WI App 234, ¶ 22, 268 Wis. 2d 138, 150, 671 N.W.2d 854, 859.

¶ 12. This case, contrary to the trial court's view, was close. There were only two witnesses to the critical transaction—White and Ehlers. Additionally, the videotape, which we have studied, was, again contrary to the trial court's view, hardly conclusive—the tape revealed actions that were consistent with both stories. Thus, we agree with White that the trial's reliability was undermined because the jury was not able to assess the following evidence. *See Strickland,* 466 U.S. at 694; *see also Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993).

¶ 13. Although White asserts that his trial lawyer should have introduced into evidence a number of things, we focus only on those that would have been admissible.

## A. *Dragan's affidavit.*

1. Dragan's averment that Ehlers "was stealing from the store."

¶ 14. There are three hurdles that evidence of a person's other acts must clear: (1) the evidence must be "relevant," Wis. Stat. Rules 904.01 & 904.02; (2) the evidence must not be excluded by Wis. Stat. Rule 904.04(2); and (3) the "probative value" of the evidence must not be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Wis. Stat. Rule 904.03. *See State v. Sullivan*, 216 Wis. 2d 768, 772–773, 576 N.W.2d 30, 32–33 (1998). Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 904.01. This is not a high hurdle; evidence is relevant if it " 'tends to cast any light' " on the controversy. *Zdiarstek v. State*, 53 Wis. 2d 420, 428, 192 N.W.2d 833, 837 (1972) (quoted source omitted). Additionally, although evidence of bad things that a person may have done "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," such evidence may be introduced for other reasons, including proof of "opportunity" and "intent."

RULE 904.04(2).[1] We analyze the evidence against this background.

¶ 15. The trial court determined that Dragan's assertion that Ehlers stole from his 7–Eleven employer would not have been admissible because, although it "might have lent some credence to the defense theory that Mr. Ehlers took money out of the till voluntarily to repay a drug debt," it was "too vague to be probative." Specifically, the trial court faulted Dragan's affidavit for not providing "sufficient specificity to the nature of his thefts — what he stole or how he stole it — to enable a jury to conclude from her observations that what is shown on the tape is theft [by Ehlers] as opposed to a robbery." We disagree.

¶ 16. First, Ehlers started to work at the 7–Eleven store in early January of 2000, and left at the end of February of 2001. Thus, his stealing from the 7–Eleven store would not have been too distant from the October 12 incident. *See Sullivan*, 216 Wis. 2d at 786, 576 N.W.2d at 38 (probative value of evidence depends in large measure on its temporal proximity to the event at issue).

■■■

¶ 17. Second, in conjunction with WIS. STAT. RULE 904.06, which recognizes that "the habit of a person . . . whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the

---

[1] WISCONSIN STAT. RULE 904.04(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

conduct of the person . . . on a particular occasion was in conformity with the habit," the evidence was not barred by WIS. STAT. RULE 904.04(2) because it went to Ehlers's ability and willingness ("opportunity" and "intent") to treat his employer's money as something he could convert to his own use. Stated another way, Dragan's proposed testimony would " 'tend[ ] to undermine[]' " Ehlers's " 'innocent explanation' " for his handing the money to White. *See State v. Roberson*, 157 Wis. 2d 447, 455, 459 N.W.2d 611, 613 (Ct. App. 1990) ("intent" under RULE 904.04(2)) (quoted source omitted). Third, given that the evidence went to the core of White's defense, it can hardly be said that its probative value was "substantially outweighed" by any of the considerations in WIS. STAT. RULE 904.03.

2. White's demeanor and Ehlers's following White into the store.

¶ 18. As the trial court recognized, Dragan's observation that Ehlers volunteered to serve White supported White's contention that he and Ehlers knew one another before that evening. Additionally, as the trial court also recognized, White's demeanor in saying "hi" to her as they passed each other in the parking lot following the alleged robbery "might have weighed against the conclusion that Mr. White was at the store for malicious purposes." We agree with the trial court, however, that this evidence, by itself, was not sufficiently probative to satisfy the "prejudice" component of an ineffective-assistance-of-counsel claim. Nevertheless, this evidence should be admitted at any retrial.

B. *Terrell Sonny's prior dealings with Ehlers.*

¶ 19. This aspect has two parts: (1) Sonny's assertion that he purchased marijuana from Ehlers at the 7–Eleven "approximately 3 to 4 times," and (2) White's

754

testimony that Sonny was the one who had introduced him to Ehlers as a marijuana source. We discuss these matters in turn.

1. Ehlers's alleged sales to Sonny.

¶ 20. Evidence that Ehlers sold marijuana to Sonny has to clear the same three *Sullivan* hurdles as does Dragan's proposed testimony that Ehlers had stolen from his 7–Eleven employer. The trial court recognized that "[w]hether Mr. Ehlers sold marijuana from the 7–Eleven store would be relevant" to bolster White's contention that he had purchased the marijuana for which he paid $325 from Ehlers at the store. We agree. Additionally, the evidence of Ehlers's prior marijuana sales to Sonny would not be excluded by Wis. Stat. Rule 904.04(2) because it goes to Ehlers's "intent" and "opportunity" to use the store as a convenient place to accommodate his marijuana customers. Finally, this evidence, too, went to the core of White's defense: that on October 10, 2000, he bought marijuana from Ehlers and was "shorted." Thus, as with the allegation that Ehlers had stolen from his employer, the probative value of evidence that he used his employer's property as a store from which to sell marijuana was not "substantially outweighed" by any of the considerations in Wis. Stat. Rule 904.03.

2. Sonny's introduction of White to Ehlers.

¶ 21. This evidence also went to the heart of both White's contention that he knew Ehlers before the October 12 incident, and, also, to contradict Ehlers's testimony that he had never seen White before October

12. Although "cumulative" in a technical sense, it was highly corroborative of White's defense, and, accordingly, its probative value was not "substantially outweighed by ... [the] needless presentation of cumulative evidence." *See* WIS. STAT. RULE 904.03.

C. *Ehlers's probationary status during White's trial.*

¶ 22. Prior to White's trial, his lawyer asked the State to disclose "the criminal record ... of any prosecution witness." Ehlers was placed on probation for two years under a deferred-judgment of conviction in March of 2001. One year later, he was removed from probation "supervision" by an amended judgment but remained on probation under the deferred judgment, which according to the terms of the amended judgment remained "affirmed ... [i]n all other respects." The prosecution never disclosed to White Ehlers's deferred-judgment probationary status when he testified against White.[2] Although White also frames the probationary-status matter in terms of whether his trial lawyer was ineffective for not discovering Ehlers's status on his own, we analyze the matter in the context of the prosecutor's responsibilities under WIS. STAT. § 971.23(1). *See Gross*, 227 Wis. at 300, 277 N.W. at 665 (only dispositive issue need be addressed).

¶ 23. Under WIS. STAT. § 971.23(1)(f), a prosecutor must, upon request, disclose to the defense "[t]he crimi-

---

[2] It is not clear from the appellate record whether the State disclosed the *fact* of Ehlers's conviction, as opposed to Ehlers's status. Ehlers admitted on cross-examination that he had previously been convicted of one crime, and it is not apparent whether this refers to the Richland County matter or another. Under WIS. STAT. § 961.47, a person is not eligible for deferral if he or she has been previously convicted of a drug crime.

nal record of a prosecution witness which is known to the district attorney." A prosecutor, however, has an affirmative duty to make reasonable inquiry and may not assert that he or she did not know of those things within the ambit of § 971.23 that could have been reasonably discovered. *See Wold v. State*, 57 Wis. 2d 344, 349, 204 N.W.2d 482, 486 (1973) (prosecutor's duty to disclose encompasses duty "to obtain *all* evidence in the possession of investigative agencies of the state") (emphasis in original); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (non-disclosure of evidence favorable to defendant, when defendant has requested that information, violates due process "irrespective of the good faith or bad faith of the prosecution"); *cf. State v. DeLao*, 2002 WI 49, ¶ 21, 252 Wis. 2d 289, 301, 643 N.W.2d 480, 486 ("under certain circumstances, the knowledge of law enforcement officers may be imputed to the prosecutor"). Moreover, in this case an assistant district attorney signed the trial court's pre-trial order and, by virtue of her signature on that order, "acknowledge[d] an obligation to diligently *seek* and provide discoverable materials in a timely manner." (Emphasis added.) White's lawyer was entitled to rely on this acknowledgment. *See Wold*, 57 Wis. 2d at 351, 204 N.W.2d at 487 ("If there is to be pretrial discovery, broad or limited, in criminal cases, defense counsel should be able to rely upon evidence as disclosed by the state; otherwise, the purpose of discovery is frustrated and more injustice is done than if no discovery were allowed.").

¶ 24. The trial court held that Ehlers's deferred-judgment probationary status was not relevant because White disclosed to the jury that Ehlers had been convicted of a crime. The trial court explained: "The mere fact that he was on probation would not give the jury a reason to doubt his credibility, certainly not any more

so than they already might by virtue of learning that he had been convicted of a crime." In rejecting White's contention that Ehlers's probationary status enhanced Ehlers's motive to lie about what happened on October 12 because an admission of theft from his employer would have jeopardized not only his continued probation but also the deferred nature of the judgment, the trial court opined: "While it would not be impossible for a jury to draw this conclusion from this evidence, it is equally plausible that the jury would conclude that his being on probation gave him an incentive not to perjure himself or obstruct an officer, which also might lead to revocation." The test, however, is whether the jury should have been permitted to consider the evidence so that their verdict was fair. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

¶ 25. A witness's probationary status is relevant because it and the fear of possible revocation are pertinent to the material issue of whether the witness has "ulterior motives" to shape his or her testimony. *Davis v. Alaska*, 415 U.S. 308, 311, 316, 317–318 (1974). Indeed, unless a defendant can "make a record" so the jury can assess *why* the witness might be testifying falsely, attacks on credibility will often be perceived by the jury as "a speculative and baseless line of attack." *Id.*, 415 U.S. at 318; *see also State v. Williamson*, 84 Wis. 2d 370, 383, 267 N.W.2d 337, 343 (1978) ("extrinsic evidence may be used to prove that a witness has a motive to testify falsely"). Significantly, the non-disclosed evidence need not necessarily be of such force to result in an acquittal: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial

resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. It may very well be that the jury would have adopted the trial court's analysis, but, under our system, White had the right to lay a foundation to present his theory to the jury and have the jury decide—every defendant is entitled to " 'a meaningful opportunity to present a complete defense.' " *State v. St. George*, 2002 WI 50, ¶ 14 n.8, 252 Wis. 2d 499, 512–513 n.8, 643 N.W.2d 777, 781–782 n.8 (quoted source omitted). In sum, we cannot say that failure to apprise the jury that Ehlers had a motive to lie about the robbery was " 'harmless beyond a reasonable doubt.' " *See State v. Norman*, 2003 WI 72, ¶¶ 47–48, 262 Wis. 2d 506, 528–529, 664 N.W.2d 97, 108–109 (quoted source omitted).

## III.

¶ 26. White is entitled to a new trial.
*By the Court.*—Judgment and orders reversed.