COURT OF APPEALS
DECISION
DATED AND FILED

September 17, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1220-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF737

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

TIMOTHY C. DIETZEN,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Hruz, Gill and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   The State appeals from an order granting Timothy Dietzen's motion for postconviction relief.  On appeal, the State contends that the

circuit court erred by concluding that Dietzen's trial counsel was constitutionally ineffective. For the reasons that follow, we affirm the court's order.

## BACKGROUND

¶2      The State charged Dietzen in 2018 with three counts of incest with a child based on allegations that he anally penetrated each of his three adopted sons—William, Scott, and Michael—with his penis.[1] According to the criminal complaint, William reported in October 2017 that Dietzen sexually assaulted him multiple times between 2011 and 2012 while Dietzen was giving him massages. In December 2017, Scott reported that Dietzen "[d]id the stuff to me that he did with [William]" on one occasion sometime between October 2016 and October 2017. In early 2018, Michael reported that Dietzen sexually assaulted him "more than once" during massages. Michael alleged that the sexual assaults began in 2013 and continued for approximately two years.

¶3      Dietzen's trial counsel filed a motion to admit evidence at trial that all three complainants "were involved in sexual activity with each other and received counseling for that fact." In particular, counsel wanted to highlight that shortly after Scott moved into Dietzen's home, Scott disclosed to authorities that Michael sexually assaulted him. The assaults included sexual touching, oral sex, and attempted anal penetration.[2] In addition, social service and law enforcement records

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms when referring to the complainants in this case. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Following Scott's disclosure of the sexual assaults, Michael was adjudicated delinquent in May 2013 on a single count of second-degree sexual assault of a child.

showed that William and Michael were having sexual intercourse with each other between 2010 and 2012.

¶4     The motion stated that Dietzen's trial counsel was aware "that this prior sexual activity would ordinarily be protected under" Wisconsin's rape shield law,[3] but it asserted that the information was "critical to an understanding that these boys knew very well that sexual contact from anyone when they were minors was wrong, criminal, and would be given attention by the adults around them." The State objected to the evidence, arguing that none of the exceptions for admitting the complainants' prior sexual conduct applied.

¶5     At a hearing on the motion, the circuit court stated that it had "a real concern with the rape shield law" issue and that it was "not inclined to grant" the motion before trial. The court reasoned that the admissibility of the evidence would "depend upon how the case is presented" and "should be addressed as we are moving along" at trial. Dietzen's trial counsel responded that "the broader concern" was "the ability to try the case fairly, which is really a constitutional and not a statutory issue." Trial counsel did not cite **State v. Pulizzano**, 155 Wis. 2d 633, 456 N.W.2d 325 (1990).[4]

¶6     Prior to the jury trial, Dietzen's trial counsel obtained various social service, juvenile, psychological, and counseling records showing that Michael,

---

[3] *See* WIS. STAT. § 972.11(2).

[4] In **Pulizzano**, our state supreme court held that the rape shield statute was unconstitutional as applied to the defendant in that case, and the court concluded that "in some cases a defendant's confrontation and compulsory process rights might require that evidence of a complainant's prior sexual conduct be admitted, notwithstanding the fact that the evidence would otherwise be excluded by the [statute]." **State v. Pulizzano**, 155 Wis. 2d 633, 647-48, 456 N.W.2d 325 (1990).

3

William, and Scott had psychological, cognitive, and/or behavioral issues. Trial counsel did not consult with an expert on these diagnoses or behavioral issues.

¶7 The case proceeded to a jury trial during which several witnesses testified, including all three complainants. During their testimony, the complainants provided graphic accounts of the alleged sexual assaults, which included detailed accounts of the mechanics and sensations of anal intercourse. While trial counsel was cross-examining William, she asked him whether he was "getting some regular counseling about what was appropriate between family members." The State requested a sidebar, and the parties and the circuit court held a discussion.

¶8 Outside the presence of the jury, Dietzen's trial counsel argued that the jury was receiving a "picture painted of kids who have no idea" about sexual activity, and that the circuit court should admit evidence of the complainants' prior sexual activity with each other. The State again argued that the rape shield statute prohibited the evidence. Neither Dietzen's trial counsel nor the State cited *Pulizzano*.[5] Ultimately, the court permitted Dietzen's trial counsel to ask the complainants whether they received counseling, whether they had opportunities to disclose the assaults perpetrated by Dietzen during that counseling but failed to disclose them, and whether through the counseling they had "opportunities to learn that sexual relations with family members is not appropriate."

¶9 The jury found Dietzen guilty on all three counts. Dietzen filed a postconviction motion asserting that his trial counsel was constitutionally ineffective because she, among other things, failed to raise *Pulizzano* as a means to overcome the rape shield statute's exclusion of evidence regarding the

---

[5] Dietzen's trial counsel did argue that "there are exceptions to rape shield and there is the constitutional entitlement to the fair trial that kind of trumps the statute."

complainants' prior sexual experiences. Specifically, Dietzen stated that information about the complainants' sexual activity with each other was an alternative source for their sexual knowledge and was, therefore, admissible evidence under *Pulizzano*.

¶10 Dietzen also alleged that his trial counsel was constitutionally ineffective because she "failed to consult with and present expert testimony at trial to explain the diagnoses of the [complainants] so that the jury could properly assess their credibility, motivations to testify falsely, and … reliability." Included with the motion was an affidavit of Dr. David Thompson, a clinical psychologist, who provided a summary of the complainants' backgrounds and diagnoses.

¶11 Following a *Machner*[6] hearing, additional briefing, and oral argument from the parties, the circuit court granted Dietzen's postconviction motion, vacated Dietzen's convictions and sentences, and ordered a new trial. The court determined that Dietzen's trial counsel had performed deficiently by failing to argue that evidence of the complainants' sexual activity was admissible under *Pulizzano* and by failing to provide expert testimony regarding their diagnoses. According to the court, these deficiencies prejudiced Dietzen's defense. The State now appeals.[7] Additional facts will be provided as necessary below.

## DISCUSSION

¶12 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of

---

[6] *See* *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] The circuit court stayed its order granting Dietzen's postconviction motion until the completion of this appeal.

5

counsel." ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient and that the deficient performance prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).

¶13 Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness. When evaluating counsel's performance, courts are to be 'highly deferential' and must avoid the 'distorting effects of hindsight.'" ***State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). "Trial strategy is afforded the presumption of constitutional adequacy." ***Breitzman***, 378 Wis. 2d 431, ¶65. We "will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." ***Id.*** (alteration in original; citation omitted).

¶14 "In order to demonstrate that counsel's deficient performance [was] constitutionally prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" ***Thiel***, 264 Wis. 2d 571, ¶20 (citation omitted). A defendant "need not prove the outcome would 'more likely than not' be different in order to establish prejudice." ***State v. Sholar***, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted).

¶15 Ineffective assistance claims present mixed questions of fact and law. ***Thiel***, 264 Wis. 2d 571, ¶21. Importantly for purposes of this appeal, a circuit court's factual findings, including those regarding trial counsel's conduct and

strategy, will be upheld unless clearly erroneous. *Id.* Whether counsel's performance satisfies the constitutional standard for ineffective assistance is a question of law we review de novo. *Id.*

## I. Deficient performance—*Pulizzano* exception

¶16 The State first argues that Dietzen's trial counsel did not perform deficiently by failing to present evidence of the complainants' prior sexual activity pursuant to *Pulizzano*. We disagree.

¶17 "Wisconsin's rape shield law … generally prohibits a defendant … from introducing evidence concerning [an] alleged victim's prior sexual conduct." *State v. Carter*, 2010 WI 40, ¶39, 324 Wis. 2d 640, 782 N.W.2d 695 (footnote omitted).

¶18 Under the *Pulizzano* exception, the rape shield statute may be overcome by a defendant's constitutional right to present material evidence of a complainant's prior sexual conduct. The *Pulizzano* exception has been applied when the complainant is a child and "the possibility of the child having a previous sexual experience may be relevant to the defendant's case because it could provide an alternative source for the child's detailed sexual knowledge." *Carter*, 324 Wis. 2d 640, ¶41.

> [T]o establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge, prior to trial the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the [acts are] clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

*Pulizzano*, 155 Wis. 2d at 656. "If the defendant makes that showing, the circuit court must then determine whether the State's interests in excluding the evidence are so compelling that they nonetheless overcome the defendant's right to present it." *Id.* at 657.

¶19    The circuit court in this case determined that the *Pulizzano* exception applied to Dietzen's case and that Dietzen's trial counsel performed deficiently by failing to argue its applicability.[8]  In particular, the court found that the prior sexual acts between the complainants were "the same, or very similar, to the conduct that was alleged to have been committed by" Dietzen.

¶20    Further, the circuit court found that evidence of the prior sexual acts was relevant "to the material issue of the complainants' sexual knowledge."  The court noted that "the State made the explicit argument [in its closing argument] that these [complainants] would not have been able to describe the assaults in such detail unless they were assaulted by" Dietzen.

¶21    As to the remaining *Pulizzano* factors, the circuit court found that evidence of the prior sexual acts was necessary to Dietzen's defense to demonstrate that the three complainants had specific prior sexual knowledge of anal penetration. The court found that the evidence was more probative than prejudicial, and the court reasoned that any prejudice could be mitigated by limiting jury instructions.

¶22    We agree that the complainants' prior sexual acts with each other closely resembled the allegations against Dietzen.  *See Pulizzano*, 155 Wis. 2d at 656.  Dietzen was accused of anally penetrating all three complainants with his

---

[8] The State does not dispute on appeal that the prior sexual acts between the complainants "clearly occurred." *See Pulizzano*, 155 Wis. 2d at 656.

penis. Similarly, Michael and William anally penetrated each other using their penises, and Michael attempted to anally penetrate Scott using his penis. *See id.* at 640-41, 652 (concluding that prior sexual acts—particularly, "fondling and 'sodomy of the penis,' which include[d] fellatio, and 'possibly' anal penetration"—closely resembled allegations of "fondling, fellatio, anal penetration with an object, and digital vaginal penetration").

¶23 The State asserts that the prior sexual acts do not closely resemble the allegations against Dietzen because "Dietzen proffered no evidence" that the complainants' sexual conduct with each other "progressed, as it did with Dietzen, as massages"; "involved oil or lube"; or "involved an adult and a child (in this case, teenagers)." The State reads the "closely resemble" analysis too narrowly by asking this court to require the prior sexual conduct in this case to include the *exact* circumstances present in the allegations against Dietzen.

¶24 The *Pulizzano* exception was created, on constitutional grounds, as an avenue for a defendant to show that an alleged sexual assault victim has "an alternative source for sexual knowledge." *See id.* at 638, 652. It follows, then, that the "closely resemble" analysis pertains primarily to the type of sexual activity; it does not necessarily include the specific circumstances surrounding the sexual activity. *See generally State v. Dunlap*, 2002 WI 19, ¶¶24-27, 250 Wis. 2d 466, 640 N.W.2d 112 (outlining the "closely resemble" analysis). The State has provided no authority to the contrary.

¶25 In addition, the prior sexual activity at issue in this case was "clearly relevant to a material issue" at trial and was necessary to Dietzen's defense. *See Pulizzano*, 155 Wis. 2d at 656. Evidence of prior sexual activity that closely resembles a present allegation "is probative of a material issue, to show an

9

alternative source for sexual knowledge, and is necessary to rebut the logical and weighty inference that [an alleged victim] could not have gained the sexual knowledge he [or she] possessed unless the sexual assaults [a defendant] is alleged to have committed occurred." *See id.* at 652.

¶26    Here, the State argues that a reasonable jury would assume that the complainants had prior sexual knowledge due to sexual education classes, access to pornography, and social media.[9]    However, as the circuit court found, the complainants were not of average intelligence, and this point was stressed by the State at trial.  The State presented the complainants to the jury as "three young, scared, vulnerable children" who had "special needs" and were "lower functioning." The State also contended that the complainants considered Dietzen's sexual assaults as "healing" rather than sex.  Under these circumstances, even if a reasonable jury could assume that the complainants had some general sexual knowledge from sources such as sexual education classes, a reasonable jury would not assume that the complainants had specific prior knowledge of anal intercourse, including the sensations felt both during and after the intercourse.

¶27    Accordingly, the prior sexual activity provided William, Michael, and Scott with personal knowledge of anal intercourse prior to their allegations against Dietzen.  As to William and Michael, a jury could interpret the prior sexual activity as explaining their detailed testimony regarding the mechanics and sensations of anal intercourse.  William testified:

> After a little bit [Dietzen] rubs his penis on my crack just so
> that he can kind of get a little bit hard.  And then he puts lube

___

[9] We note that Michael testified to having a child with his girlfriend around the time he made the allegations against Dietzen.  Michael also testified that he was sexually assaulted prior to being adopted by Dietzen and that he went to counseling for that fact.  No details about this prior sexual assault were provided to the jury.

> on his penis and then he puts it by my hole, the lube. And then he slowly goes in and then I tell him it hurts; and then he pulls back a little bit so that way I can adjust to it, right? Then after I get used to it he thrusts and then but, you know, still working on me too and then—and then he gets a little bit faster. Then after a little while he comes, right, and then he pulls out.

(Formatting altered.) Similarly, Michael testified that "when a penis gets hard, it throbs" and that "when you come inside of somebody's butt and you go to the bathroom … [i]t's kind of like lubrication or something, but it lets everything just fall out." Scott, while able to discuss the massages, could not provide the level of detail provided by William and Michael about the alleged anal intercourse other than that Dietzen's penis "slipped in easily." A jury could attribute Scott's lack of detail to Michael's attempted, but unsuccessful, anal intercourse with Scott.

¶28 Thus, all three complainants' prior sexual activity with each other was relevant to whether they had specific prior knowledge of anal intercourse. This evidence was "necessary to rebut the logical and weighty inference that [the complainants] could not have gained the sexual knowledge [they] possessed unless the sexual assaults [Dietzen] is alleged to have committed occurred." *See **Pulizzano***, 155 Wis. 2d at 652. The State focused on this inference at trial, and the State suggested during its closing argument that the "low-functioning kids" would not have been able to provide detailed testimony about the assaults—including how anal intercourse felt—if the assaults had not occurred.

¶29 Additionally, we agree with the circuit court that the complainants' evidence of prior sexual activity was more probative than prejudicial. *See **id.*** at 656. The State argues that "[h]aving the [complainants] testify that they had anal sex with each other would not have helped the defense explain why the [complainants] reported and testified about Dietzen's sexual abuse of them." However, the purpose

of the evidence would not be to show the complainants' motive for stating that the assaults had occurred. Rather, the purpose would be to show that the complainants had prior knowledge of anal intercourse, which came from the complainants' prior personal experience.

¶30 The State asserts that its interests in excluding evidence of the complainants' prior sexual activity are more compelling than Dietzen's right to present the evidence. *See id.* at 657. In support of this argument, the State argues that the evidence "would have deflected attention away from" the ultimate question of whether Dietzen sexually assaulted the complainants.

¶31 In *Pulizzano*, our state supreme court noted that the rape shield statute served several legitimate state interests, including preventing a defendant from harassing and humiliating a complainant and preventing the trier of fact from being misled or confused by collateral issues and deciding a case on an improper basis. *Id.* at 647. However, the court also stated that "[c]onfrontation and compulsory process are fundamental rights expressly granted by the state and federal constitutions." *Id.* at 654. These rights are "essential" and "vital." *Id.* (citations omitted). "[A]s important and legitimate as a state's interests in its evidentiary rules are, … those interests are not of a constitutional dimension." *Id.* As applied in *Pulizzano*, the court concluded that the State's interests did not outweigh the defendant's right to present evidence of the complainant's prior sexual activity to demonstrate an alternative source of sexual knowledge. *Id.* at 655.

¶32 Similarly, here, the inference that the complainants could not possess the sexual knowledge they did unless Dietzen sexually assaulted them greatly bolstered the complainants' allegations and credibility. *See id.* "In order to rebut that inference, [Dietzen] must establish an alternative source for [the complainants']

sexual knowledge. Evidence of the prior sexual [activity] is therefore a necessary and critical element of [Dietzen]'s defense." *See id.* Under the facts of this case, Dietzen's constitutional right to present ***Pulizzano*** evidence related to all three complainants outweighs the State's interests in protecting the complainants and not confusing the trier of fact.[10]

¶33 The State also had "less restrictive alternatives available … that would have allowed it to protect its interests without violating [Dietzen]'s constitutional rights." *See id.* at 654. Namely, the State could request a limiting jury instruction to ensure the jury considered the prior sexual activity only for the permissible purpose described above. *See* WIS JI—CRIMINAL 1200G (2023) ("Cautionary instruction: Evidence of victim's prior sexual conduct").

¶34 Evidence of the complainants' prior sexual activity amongst themselves was admissible, and Dietzen's trial counsel testified that she did not have a strategic reason for not citing, or arguing, ***Pulizzano*** in her pretrial motion or at trial. Therefore, we agree with the circuit court that trial counsel performed deficiently by failing to properly seek admission of that evidence under the ***Pulizzano*** exception. *See **Thiel***, 264 Wis. 2d 571, ¶51.

---

[10] The State asserts that its interests in enforcing the rape shield statute outweigh Dietzen presenting ***Pulizzano*** evidence because "[a]s the entire trial transcript shows, Dietzen was not denied his constitutional right to a defense without presenting this evidence." We deem this argument to be undeveloped because the State does not support its argument with citation to any particular evidence from the trial. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). Moreover, as we have explained, the evidence was necessary to establish an alternative source for the complainants' sexual knowledge, which was a critical part of Dietzen's defense.

## II. Deficient performance—Expert witness

¶35    The State next argues that Dietzen's trial counsel did not perform deficiently by failing to present expert testimony regarding the complainants' mental health issues and diagnoses. Again, we disagree.

¶36    The records obtained by Dietzen's trial counsel provided some insight into the complainants' diagnoses and behavioral and mental health histories, and how these subjects could be relevant to Dietzen's defense. For example, the records show that William was diagnosed with schizophrenia in his adolescence—symptoms of which included visual and auditory hallucinations—as well as oppositional defiant disorder (ODD),[11] bipolar disorder, attention deficit/hyperactivity disorder (ADHD), and cognitive disabilities, including a "full-scale IQ [of] 69." Records also state that William was "very fixated on sex," that he believed rules did not apply to him, and that he was experiencing "hallucinations and/or delusional thinking during the period before and after" he made the accusations against Dietzen. In addition, records specify that shortly after William accused Dietzen, William was emergently detained at a residential facility, given a competency examination, and was prescribed medication used to control manic episodes. William was found to be incompetent to manage his own decisions, and a guardianship, which was previously ordered, was continued. Notes from the detention state that William was suffering from an exacerbation of his mental health disorders.

¶37    The records also demonstrate that Scott was diagnosed with ADHD, an unspecified mood disorder, receptive and expressive language disorders,

---

[11] According to the record, ODD is characterized by "[a] pattern of angry/irritable mood, argumentative/defiant behavior, or vindictiveness."

14

pervasive developmental disorder, intellectual disabilities, and possibly disruptive behavior disorder. According to the records, he had a "full-scale IQ of 60" and a history of "acting out" in order to reunite with his biological mother, who had rejected him.

¶38    Finally, the records reveal that Michael was diagnosed with reactive attachment disorder (RAD),[12] ODD, and ADHD. According to the records, Michael has a "history of … lying to 'one[-]up' [William]," would manipulate and deceive others to "get his needs met," and lacked "moral boundaries."

¶39    At the *Machner* hearing, Dietzen's trial counsel testified that prior to trial, she had obtained and reviewed thousands of pages of documents related to the complainants, including their social service, juvenile, psychological, and counseling records. Trial counsel stated that she did not consult with an expert, consider hiring an expert, or discuss with Dietzen the prospect of hiring an expert. On cross-examination, the State asked trial counsel whether "part of [her] strategy going into trial was to have [Dietzen] testify to th[e] diagnoses and how they present themselves." Trial counsel responded, "It was one of the things that [Dietzen] knew and that we could have him testify about …."

¶40    Doctor Thompson also testified at the *Machner* hearing, stating that he had reviewed the complainants' records and their trial testimony, and he described in detail the complainants' various backgrounds and diagnoses discussed above. On direct examination, Thompson agreed that there was not sufficient evidence at trial "to explain the depth and the breadth of [the complainants']

---

[12] According to the record, RAD "reflects a pattern of very disturbed and developmentally inappropriate attachment behaviors.…  Such youth [diagnosed with RAD] reportedly are poorly bonded with their caretakers, lie at very high rates, manipulate others … , and are often impulsive."

historical difficulties, and the resulting development and mental health disorders." In his affidavit, Thompson opined that this information would have been an important and necessary component of evidence to help a jury understand … how their disorders impacted their perceptions, thinking, and motivations."

¶41 At the outset, the State argues that there can be no deficient performance for failing to hire an expert or present that expert's testimony at trial. The State is incorrect. "Counsel must either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary." *State v. Pico*, 2018 WI 66, ¶22, 382 Wis. 2d 273, 914 N.W.2d 95 (citation omitted). "Failure to call a potential witness may constitute deficient performance." *State v. Jenkins*, 2014 WI 59, ¶41, 355 Wis. 2d 180, 848 N.W.2d 786; *see also State v. White*, 2004 WI App 78, ¶¶20-21, 271 Wis. 2d 742, 680 N.W.2d 362 (concluding that trial counsel performed deficiently by failing to call witnesses who would have provided evidence that "went to the core of [the] defense"). This court has concluded that a trial "counsel's failure to present independent medical testimony constituted deficient performance" because the expert could have presented alternative testimony to counter a medical examiner's testimony. *See State v. Zimmerman*, 2003 WI App 196, ¶42, 266 Wis. 2d 1003, 669 N.W.2d 762. Accordingly, trial counsel can perform deficiently by failing to investigate facts that could aid the defense's theory and by failing to call a witness who would provide key evidence.

¶42 Turning to the specific facts of this case, the circuit court found that trial counsel was credible when she testified that she had no explanation for her failure to consult with or hire an expert. Further, the court stated:

> I think it's important to … remind ourselves that an expert
> on psychological and cognitive issues, like those present

16

involving the [complainants] in this case, would have provided neutral testimony to educate the jury.… By failing to fully investigate and educate herself with the assistance of an expert, [trial counsel] ignored relevant lines of inquiry, and failed to present evidence that would have been helpful to Mr. Dietzen's defense. Particularly, the ability to highlight how the [complainants'] diagnoses impacted their ability to discern reality or be influenced by other desires.

¶43    The State takes issue with the circuit court's finding that Dietzen's trial counsel was credible when she stated that she did not have a reason for not consulting with an expert and that she never considered hiring an expert. While it is true that early in the *Machner* hearing, the court stated that it found trial counsel's statement that she did not consider consulting with an expert "hard to believe" and "not credible," the court later explained during its oral ruling on Dietzen's postconviction motion:

> During the *Machner* hearing, [trial counsel] testified for quite some time. I will say today that I was shocked, surprised, and sort of taken aback by some of her testimony. And almost a year later, I have spent a lot of time reading her testimony, and reviewing her testimony, and trying to make sense of it.
>
>  ….
>
> I forget exactly what my questions are word for word, but I doubted the credibility initially too. And then as the hearing went on, and I tried to understand more and think it through, as difficult or surprising as it is for me to believe, which is what I indicated earlier, I find that she is credible on that point. I don't think she was being dishonest or misleading, and I think that she just never considered that option, similar to what she testified to, and never provided that opportunity to Mr. Dietzen, or had that discussion with her client.

¶44    Contrary to the State's argument, these findings are not clearly erroneous simply because they were "made more than a year after the [*Machner*]

hearing."[13]  The court reviewed the record after the *Machner* hearing, reflected on trial counsel's testimony, and rendered findings of fact.  The State cites to no evidence in the record suggesting that the court's credibility finding is clearly erroneous.  Upon our independent review, we conclude the court's finding is supported by the record.  The State also does not cite any authority dictating that the court was bound by its initial perceptions at the *Machner* hearing, which we do not find surprising—judges are permitted to reassess their findings.

¶45    Based on the circuit court's findings, we agree that trial counsel's failure to consult with an expert in this case—and resultant failure to present that expert's findings at trial—constituted deficient performance.  The theory of defense was that the complainants falsely accused Dietzen of sexual assault as a result of their troubled backgrounds, mental health issues, and other diagnoses.  Under these circumstances, constitutionally effective assistance of counsel would have included calling an expert witness at trial to testify regarding the complex relationship between the complainants' pre-adoption backgrounds, behavioral issues, mental health issues, diagnoses, and accusations against Dietzen.  Stated differently, to further the defense theory at trial, it was necessary for the defense to not only accurately outline the complainants' backgrounds and diagnoses, but also explain how those issues could have affected the complainants' reasoning, perceptions, and potential motivations to accuse Dietzen.

---

[13] We note that Dietzen's trial counsel stated in a pretrial motion to access the complainants' records that "[t]he records will contain information useful to an expert witness in addressing how a false accusation may be presented."  We question whether this single reference would be adequate to support a finding that trial counsel sufficiently considered hiring an expert and made a strategic decision not to hire one.  The State does not make this argument, however, and we need not further address this single reference to an expert.

¶46    While there was some evidence presented at trial regarding the complainants' backgrounds, mental health issues, and other diagnoses, a significant amount of that information was never introduced or was not sufficiently expanded upon.  For example, the jury heard evidence that William had experienced hallucinations, but no evidence was provided to suggest that William was experiencing an exacerbation of his mental health disorders around the time that he accused Dietzen of sexual assault.  Moreover, no evidence was presented to explain how his diagnoses would relate to his accusations against Dietzen.

¶47    This evidentiary gap was significant, given that there was available evidence that would support an inference that William was impulsive, had difficulty recognizing the consequences of his actions, and was fixated on sex.  Doctor Thompson opined that William "did experience hallucinations and/or delusional thinking during the period before and after he made the accusation and this fact was not disclosed in a way that adequately informed the jury of this important issue."  Thompson also hypothesized that William's fixation on sex, along with his delusional thinking and prior anal intercourse with Michael, "made it reasonably likely that he incorrectly remembered, believed, or perceived the massages as being sexual and conflated the memories of anal intercourse with his brother into the massage memories."

¶48    Regarding Scott, while there was evidence presented at trial suggesting that he had attachment issues with his mother, there was a lack of evidence demonstrating the extent of his previous actions to reunite with her.  Scott's records showed that he was extremely attached to his biological mother and that prior to being adopted by Dietzen, Scott would "act[] out to get out of [his] current foster home in the hopes that that w[ould] get him back to [his] biological mom."  Doctor Thompson stated that Scott's "lower cognitive abilities, reduced

self-control, and reduced behavioral inhibitions would have diminished his ability to fully understand the consequences of a false accusation and to delay gratification of his desire to return to his biological family."

¶49    With respect to Michael, Dietzen and another witness simply stated that RAD includes behavioral and attachment issues. However, none of the evidence at trial adequately explained RAD, including that it can result in an individual having no moral boundaries and having a strong desire to gain attention.

¶50    Ultimately, none of the testimony at trial, including that from Dietzen, adequately articulated each of the complainants' backgrounds and diagnoses or explained how those facts could affect the ultimate issue of whether Dietzen sexually assaulted the brothers. While Dietzen provided some of this information, an expert witness would have provided neutral testimony on these topics, rather than testimony from a lay defendant accused of the sexual assaults in question. Thus, even if trial counsel's strategy at trial was to admit the relevant evidence through Dietzen and other witnesses, that strategy was irrational and unreasonable under the facts of this case, as the circuit court found in its decision on Dietzen's postconviction motion. *See Breitzman*, 378 Wis. 2d 431, ¶65.

¶51    We also agree with Dietzen that Dr. Thompson's testimony would have been admissible. Our supreme court has articulated "a two-part inquiry encompassing both admissibility and constitutional issues associated with a defendant's proffered expert witness testimony." *State v. Schmidt*, 2016 WI App 45, ¶73, 370 Wis. 2d 139, 884 N.W.2d 510. First, the defendant must show that the testimony satisfies the following four requirements:

> (1) [t]he testimony of the expert witness me[ets] the WIS. STAT. § 907.02 standards governing the admission of expert testimony; (2) [t]he expert testimony [is] "clearly relevant to

20

a material issue" in the case; (3) [t]he expert testimony [is] necessary to the defendant's case; and (4) [t]he probative value of the expert testimony outweigh[s] its prejudicial effect.

*Id.*, ¶74 (citation omitted). If the defendant satisfies these requirements, we then consider whether his or her "right to present the proffered evidence is nonetheless outweighed by the State's compelling interest to exclude the evidence."[14]  *See id.* (citation omitted).

¶52    WISCONSIN STAT. § 907.02(1) states that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony *is based upon sufficient facts or data*, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.)   The State asserts that Dr. Thompson's proposed testimony would not be based upon sufficient facts because Thompson did not personally interview the complainants and because he did not review every document available to trial counsel.  We disagree in both respects.

---

[14] Dietzen does not dispute the State's contention that the test for admissibility set forth in *State v. Schmidt*, 2016 WI App 45, ¶74, 370 Wis. 2d 139, 884 N.W.2d 510, applies to Dr. Thompson's proposed testimony.  We therefore assume without deciding that it is appropriate to apply that test in this case.

We also note that the State does not address the fourth requirement under the first part of the *Schmidt* test or the compelling State interest test.  We therefore assume without deciding that the probative value of Dr. Thompson's proposed testimony would outweigh its prejudicial effect and that Dietzen's right to present the testimony would not be outweighed by any compelling interest raised by the State.  *See id.*

¶53 Despite not interviewing the complainants and reviewing every document, Dr. Thompson's opinions were not based on speculation. *See* 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 702.4033 (4th ed. 2023); *see also* WIS. STAT. § 907.03 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."). Thompson stated that he was not diagnosing the complainants. Rather, he reviewed "their records and offer[ed] opinions about the kind of behaviors that one might see with children who had already been diagnosed by professionals." Moreover, Thompson was relying on the records to find specific examples of how the diagnoses affected the complainants' behavior. His review included "hundreds of pages of documents relating to the past care, diagnosis, and treatment of the three [complainants] as well as transcripts and reports."

¶54 Contrary to the State's argument, Dr. Thompson's testimony is clearly relevant to Dietzen's defense—particularly, that the complainants' accusations could be attributed to their backgrounds, mental health issues, and other diagnoses. Unlike the proposed expert witness in **Schmidt**, Thompson reviewed records directly related to the complainants. *See* **Schmidt**, 370 Wis. 2d 139, ¶¶55, 75 (concluding that expert testimony was not relevant because the expert could "[a]t best, … testify generally as to the findings of [his research] regarding the suggestibility of children" in police interviews, but the expert could offer no testimony regarding the specific interview in question).

¶55 We also conclude that Dr. Thompson's proposed testimony is necessary to Dietzen's defense. The State argues the testimony is not necessary because Thompson stated he had no opinion on whether the complainants had

character traits for lying or whether the records showed that the complainants had previously conspired together to create a false story.

¶56 We are unconvinced by the State's arguments. Dietzen's trial focused exclusively on witness credibility. Doctor Thompson's proposed testimony, as outlined above, would pertain to the complainants' mental health issues and diagnoses and how those issues and diagnoses could lead the complainants to falsely accuse Dietzen. Thus, Thompson's testimony would aid the jury in determining whether the complainants were sexually assaulted. *See State v. Robertson*, 2003 WI App 84, ¶28, 263 Wis. 2d 349, 661 N.W.2d 105 (concluding that, in a credibility case, "information in the records concerning [the alleged victim]'s psychiatric treatment and the nature of the psychotic features presented … could explain her behavior in a way that was not possible to do during trial").

¶57 For similar reasons, we reject the State's argument that Dr. Thompson's proposed testimony would be cumulative. *See* WIS. STAT. § 904.03. As we explained previously, *see supra* ¶¶45-50, trial counsel was unable to adequately elicit information at trial about the complainants' backgrounds, mental health issues, and other diagnoses. Thus, Thompson's testimony would not be cumulative.

¶58 Given the facts in this case, trial counsel's failure to consult with an expert regarding the complainants' records and mental health issues was deficient performance. Under these circumstances, trial counsel's review of the records required expert assistance. Further, because the expert testimony described above would be admissible, trial counsel's failure to introduce such testimony, under the facts of the case, was deficient performance.

**III. Prejudice**

¶59    Finally, the State argues that even if Dietzen's trial counsel performed deficiently in the above respects, Dietzen's defense was not prejudiced by the cumulative effect of the deficiencies. *See **Thiel***, 264 Wis. 2d 571, ¶60 (stating that "the cumulative effect of several deficient acts or omissions may, in certain instances, also undermine a reviewing court's confidence in the outcome of a proceeding").

¶60    The circuit court concluded that trial counsel's deficiencies prejudiced Dietzen's defense for several reasons. The court noted that the jury's verdicts rested largely on whether the jury found Dietzen or the complainants more credible. As trial counsel's errors related to the credibility contest, the court found that the errors

> impacted the impeachment of the [complainants and] limited [the] defense's ability to cross[-]examine, effectively, the [complainants and] to explain potential reasons or causes that the [complainants] would be testifying the way they were. And I think that would potentially impact then the credibility of the [complainants], and the analysis of … who does the jury believe.
>
>  ….
>
> And today, and maybe for the last six months, or nine months, it's been clear to me that [Dietzen] didn't receive a fair trial.… And when I look at this case and say, okay, there were those two deficiencies. Those were big facts and big issues. And if those issues … would have been addressed, is there a reasonable probability that the result of the proceeding would have been different? And I think the answer is yes.

¶61    The State asserts that "the totality of the evidence against Dietzen was substantial, and so any cumulative effect of [trial] counsel's deficiencies would not have swayed the jury's decision." Indeed, prior to the charges being filed against him, Dietzen admitted to a social worker that he gave William and Scott massages,

including massages where the complainants would be naked and face down on his bed and where Dietzen would be in his underwear to avoid getting oil on his pants. Dietzen testified at trial, making similar statements to those he gave to the social worker.

¶62 Despite Dietzen's admissions, several aspects of the trial undermine our confidence in the outcome. First, as the circuit court emphasized, there was no corroborating physical evidence or eye-witness testimony, other than the testimony from Dietzen and the complainants. The question of Dietzen's guilt thus depended to a substantial degree on whether the jury believed Dietzen or the complainants. *See State v. Mader*, 2023 WI App 35, ¶¶81, 86, 408 Wis. 2d 632, 993 N.W.2d 761, review denied (WI Sept. 26, 2023) (No. 2022AP382-CR).

¶63 Second, although the complainants' accusations against Dietzen were indeed similar, as the State argues, Scott and Michael learned of William's accusation—including the details of the accusation—prior to accusing Dietzen of sexual assault. It was during Scott's third interview with law enforcement—and after he learned of William's accusations—that Scott accused Dietzen. Similarly, Michael testified that he became frustrated with law enforcement prior to his accusation against Dietzen because Michael was not receiving attention from the authorities. The evidentiary value of this timeline would have materially changed had the admissible, but otherwise excluded, *Pulizzano* evidence and the expert testimony been presented to the jury. As such, the *Pulizzano* evidence and the expert testimony could have materially affected the jury's credibility determinations.

¶64 Furthermore, and as described previously, *see supra* ¶¶22-34, the complainants' sexual activity with each other closely matched their accusations

against Dietzen, and could arguably account for their trial testimony describing Dietzen's alleged assaults.[15] In addition, the expert testimony would have better described the complainants' backgrounds, mental health issues, and other diagnoses and how those issues impacted their perceptions, their thinking, and their motivations for accusing Dietzen. *See supra* ¶¶45-50.

¶65    Finally, it should also be noted that much of the complainants' testimony was not as clear or consistent as the State's appellate briefing suggests. For example, during Scott's testimony, he claimed at various times that he was anally sexually assaulted in different cities, only to seemingly retract the accusations moments later. Similarly, William initially reported that Dietzen sexually assaulted him between 2011 and 2013. At trial, however, William stated, apparently for the first time, that Dietzen's sexual assaults continued for four years longer than previously disclosed.

¶66    Based on the foregoing discussion, we conclude that trial counsel's failure to cite ***Pulizzano*** as basis to admit evidence of the complainants' sexual

---

[15] The State contends that the proposed ***Pulizzano*** evidence would have "hindered" Dietzen's defense if "the jury (or any licensed therapist) heard that Dietzen knew that his sons had anal sex with each other, but he still had his sons strip-down naked to give them oil massages in his bedroom while he straddled their naked buttocks while he sometimes wore underwear." The State also asserts that had Dr. Thompson testified, the State would have noted to the jury that Thompson did not review all of the complainants' records, had no opinions regarding whether the complainants had character traits for lying, and there was no evidence in the record showing that the complainants had ever previously conspired with one another.

While the State may be free to make these arguments before a jury, for our purposes, it is sufficient to note that the ***Pulizzano*** evidence provided the complainants with an alternative source of specific sexual knowledge that closely resembled the sexual activity underlying Dietzen's charges. The lack of evidence before the jury regarding this sexual knowledge was prejudicial to the defense. With respect to the expert testimony, we have already noted that Dr. Thompson's testimony was admissible and necessary to the defense's theory. The fact that the State may have an avenue of impeachment does not render Thompson's testimony immaterial to our prejudice analysis.

activity with each other, and her failure to consult with an expert and provide the expert's testimony at trial, prejudiced Dietzen's defense. We therefore affirm the circuit court's order granting Dietzen's postconviction motion, vacating Dietzen's convictions and sentences, and granting him a new trial.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.